**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**CHARLES K.,**

**Plaintiff,**

**v.**

**Civil Action 3:26-cv-00029**
**Judge Michael J. Newman**
**Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff, Charles K., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 10) and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

In 2023, Plaintiff filed an application for DIB alleging disability beginning December 30, 2022, due to other intervertebral disc displacement, lumbar region; and fusion of spine, site unspecified. (R. at 207–15, 266). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing. (R. at 38–68). Ultimately, the ALJ denied Plaintiff's application in a written decision on March 26, 2025. (R. at 14–37). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on February 2, 2026 (Doc. 1), and the Commissioner filed the administrative record on April 1, 2026 (Doc. 7).

The matter has been briefed and is ripe for consideration. (Docs. 10, 12, 13).

**A. The Administrative Record**

In his opinion, the ALJ summarized Plaintiff's statements to the agency, hearing testimony, and Plaintiff's medical records and symptoms. (R. at 24–27). The ALJ also summarized and evaluated the medical source opinions and prior administrative medical findings. (R. at 27–29). Rather than repeat these summaries, the Court will focus the evidence pertinent to Plaintiff's assigned error.

**B. The ALJ's Decision**

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2028, and has not engaged in substantial gainful activity since December 30, 2022, the alleged onset date. (R. at 19). The ALJ determined that Plaintiff has the following severe impairments: cervical spine degenerative disc disease; lumbar spine degenerative disc disease with chronic pain syndrome; sacroiliitis; diabetes; and obesity. (*Id.*). Still, the ALJ found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (R. at 23).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ opined:

> After careful consideration of the entire record, the [ALJ] find[s] that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except [Plaintiff] can stand and/or walk for four hours in an eight-hour workday; never climb ladders, ropes or scaffolds; perform no work around hazards such as unprotected heights or unguarded, moving machinery; frequently balance; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; perform no operation of foot controls with the left lower extremity; and he must be able to use a cane for ambulation over 100 feet or on broken surfaces.

(R. at 24).

Relying on the vocational expert's ("VE") testimony, the ALJ found that Plaintiff is unable to perform his past relevant work as a grinding machine tender or a unit assembler. (R. at 30). But

considering his age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform at the light exertional level, such as a parts sorter, final assembler, and inspector.[1] (R. at 31–32). He therefore concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from December 30, 2022, through the date of this decision (20 CFR 404.1520(g))." (R. at 32).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

---

[1] As noted by the Commissioner in his brief, in the decision, the ALJ mistakenly identified these jobs as light exertional level jobs. (R at. 31). A review of the DOT descriptions shows that they are sedentary jobs. *See* DICOT 726.684-110 (G.P.O.), 1991 WL 679616; DICOT 713.687-018 (G.P.O.), 1991 WL 679271; DICOT 739.687-182 (G.P.O.), 1991 WL 680217. (*See* Doc. 12 at 2 (citing R. at 31)).

## III. DISCUSSION

In his statement of errors, Plaintiff first contends that the ALJ's RFC determination contains restrictions that are work preclusive per the vocational expert's testimony. (Doc. 10 at 5–6). Plaintiff next argues that the ALJ failed to build an accurate and logical bridge between the evidence and the arbitrary finding that he needs to use a cane "for ambulation over 100 feet." (*Id.* at 7). He further contends that the ALJ reversibly erred in evaluating Dr. Swedberg's opinion. (*Id.* at 8–9). Finally, Plaintiff argues that the ALJ erred in evaluating his symptom severity. (*Id.* at 9–11). The Undersigned concludes none of these assigned errors have merit.

### A. Step Five Error

To begin, Plaintiff argues that the ALJ erred in assigning RFC restrictions that are work preclusive per the vocational expert's testimony. (Doc. 10 at 5–6). The ALJ's decision states that Plaintiff was limited to "light exertional work," pertinently with restrictions including no more than four hours of standing/walking in a workday and requiring a cane for ambulation over 100 feet or on broken surfaces. (R. at 29–30, 31–32). Plaintiff claims that this is not supported by the VE's testimony that if Plaintiff requires a cane for ambulation and stands for only four out of the eight hours of the workday, Plaintiff could only work at the sedentary exertional level—not a light exertional level. (*Id.* at 63). In sum, Plaintiff argues the ALJ committed an error because a finding of "light exertional work" is not supported by substantial evidence. (Doc. 10 at 6). The Undersigned finds the ALJ's typographical error harmless.

During the hearing, the ALJ questioned the VE on the jobs Plaintiff could perform based on hypothetical limitations:

> ALJ: All right. Now, for our first hypothetical, please assume an individual of our [Plaintiff's] age, education and work history. Please further assume that the individual could perform work at the light exertional level. They could stand and/or walk for a total of four out of eight hours in a workday.

> There should be no climbing of ladders, ropes or scaffolds. There should be no work around hazards such as unprotected heights or unguarded moving machinery. There could be frequent balancing and occasional crouching, crawling, kneeling, stooping and climbing of ramps and stairs.
>
> . . .
>
> Would there be other jobs in the national economy at the light exertional level such an individual could perform?
>
> VE: Yes, there would be some jobs at a reduced range of light or limited light within those restrictions. These are SVP: 2. The first example is office helper, 239.567-010 and national numbers are 18,000. Mail sorter, 209.687-026 and national numbers are 6,500 and electronics worker, 726.687-010 and national numbers are 9,000.
>
> ALJ: All right. Now, for the next hypothetical please assume everything in the first hypothetical, but we are going to add it – what we're going to add is that the individual could have no operation of foot controls with the left lower extremity and must be able to use a cane for ambulation over 100 or on broken surfaces. Would the jobs you gave me still be available and in the same numbers?
>
> VE: Well, there's no operation of foot controls with these jobs and so if the cane is just needed for ambulation, but if you're standing and walking for four out of eight, essentially, you're using the cane with one upper extremity which pretty much doesn't allow for you doing job tasks with both upper extremities with walking and standing four of eight.
>
> I think when we're adding that in, we're probably more at a sedentary exertional level.
>
> ALJ: Okay. So, are there jobs then at sedentary?
>
> VE: Yes, some examples of jobs at sedentary, the first is parts sorter, 739.687-182, national numbers are 17,800, final assembler, 713.687-018, national numbers are 19,000 and inspector, 726.684-110, national numbers are 29,000.

(R. at 62–63).

Then in his decision at Step Five, the ALJ opined:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations, such as the following:
>
> - Parts Sorter (DOT# 739.687-182, SVP 2), which is a light exertional, unskilled position with approximately 17,800 jobs in the national economy;

> - Final Assembler (DOT# 713.687-018, SVP 2), which is a light exertional, unskilled position with approximately 19,000 jobs in the national economy; and
> - Inspector (DOT# 726.684-110, SVP 2), which is a light exertional, unskilled position with approximately 29,000 jobs in the national economy.
>
> ***
>
> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

(R. at 31–32).

It appears that although the ALJ incorrectly labeled Parts Sorter, Final Assembler, and Inspector as light exertional jobs, the ALJ grounded his Step Five conclusions in the VE's testimony and the correct sedentary level jobs. (*Id.* at 31, 63). Of note, the Dictionary of Occupational Titles confirms that the jobs identified are all sedentary jobs which "involve[] sitting most of the time, but may involve walking or standing for brief periods of time." DOT § 739.687-182, 1991 WL 679271 ("Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met."); DOT § 713.687-018, 1991 WL 679271 (same); DOT § 726.684-110, 1991 WL 679616 (same). Therefore, the ALJ's typographical error was harmless because he adequately identified jobs that Plaintiff can perform in line with the RFC as required by Step Five.

### B. The ALJ's RFC Determination and Plaintiff's Use of a Cane

Plaintiff next asserts that the ALJ failed to build an accurate and logical bridge between the evidence and his conclusion that Plaintiff was required to use a cane for ambulation over 100 feet. (Doc. 10 at 7). Plaintiff suggests that 100 feet is an "arbitrary and random" number. (*Id.*).

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in his case file. *Id.* The ALJ is not required to incorporate use of a cane into the RFC

unless the cane is medically required—in which case the cane is considered a limitation on a claimant's ability to work. *See Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002); *see also Baker v. Comm'r of Soc. Sec.*, No. 2:19-cv-4323, 2020 WL 2213893, at *7 (S.D. Ohio May 7, 2020). Social Security Ruling 96-9p explains when a cane or other hand-held assistive device is "medically required" and the implications of that medical need for a claimant's RFC:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9p at *7. It is the claimant's "burden to prove through clinical evidence that a cane is medically required." *Baker*, 2020 WL 2213893, at *7 (quoting *Strain v. Comm'r of Soc. Sec. Admin.*, No. 5:12-cv-1368, 2013 WL 3947160, at *2 (N.D. Ohio Aug. 1, 2013)).

When determining Plaintiff's RFC, the ALJ found that Plaintiff must be able to use a cane for ambulation over 100 feet or on broken surfaces. (R. at 24). In forming this conclusion, he noted that in May 2023, Plaintiff appeared to be using a cane for ambulation and had a decreased range of motion, lumbar tenderness, and abnormal gait. (R. at 25 (citing R. at 351)). He then reviewed Plaintiff's back and left lower extremity medical history at length. (*Id.* (citing R. at 811–12, 887, 890–891, 917, 985–87, 993–94)). He next discussed Plaintiff's physical consultative exam in January 2024 where Plaintiff ambulated slowly, with an antalgic gait using a cane. (*Id.* at 26 (citing R. at 622)). However, the ALJ found the Plaintiff made inconsistent statements about his intensity, persistence, and limiting effects of his symptoms. (*Id.* at 27). Specifically, Plaintiff can do daily activities that are not limited to the extent one would expect with his allegations of

disabling symptoms and Plaintiff not requiring the type of medical treatment one would expect from a totally disabled individual. (*Id.*).

The ALJ next analyzed State agency consultants' opinions. The first, Dr. Mendonca, opined that Plaintiff could stand/walk for four hours and sit for six hours during a workday, while the second, Dr. Amiri, opined that Plaintiff "may use a cane for all ambulatory distances over 25 feet." (*Id.* at 28–29 (citing R. at 76–79, 89–90)). The ALJ found Dr. Amiri's opinion "somewhat, but less than fully persuasive," and concluded that "given the claimant's consistent cane use during appointments, including during a consultative exam, as well as his complaints of left leg weakness and a recent fall, I find the [Plaintiff] must be able to use a cane for ambulation over 100 feet or on broken surfaces, and he can perform no operation of foot controls with the lower left extremity." (R. at 29). This analysis shows that the ALJ considered the relevant evidence and medical opinions, adequately explained his findings, and made findings consistent with the applicable regulatory standards.

Nonetheless, Plaintiff takes issue with the "100 feet" figure, calling it arbitrary and random. (Doc. 10 at 7). He also highlights Dr. Amiri's opinion that Plaintiff "may use a cane for all ambulatory distances over 25 feet." (*Id.*). Up front, the ALJ adequately explained why Dr. Amiri's opinion about Plaintiff's cane usage was less than persuasive, as noted above. Further, "[a]n ALJ is not required to adopt a medical opinion verbatim." *See, e.g.*, *Tanya S. v. Comm'r of Soc. Sec.*, No. 2:26-CV-00056, 2026 WL 2267454, at *2 (S.D. Ohio Aug. 6, 2026); *Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."). Dr. Amiri's opinion alone, then, does not compel the ALJ to adopt the 25-foot measurement.

Moreover, contrary to Plaintiff's assertion, the ALJ adequately explained his inclusion of the 100 feet limitation in Plaintiff's RFC. He first carefully catalogued the record evidence. (R. at 24–29). The ALJ then noted Plaintiff's pain, weakness, balance issues, mobility issues, and other symptoms related to his cervical spine degenerative disease, lumbar spine degenerative disc disease with chronic pain syndrome, sacroiliitis, diabetes, and obesity, and found he would need a cane for ambulation over 100 feet or on broken surfaces. (*Id.* at 29–30). The ALJ need not provide a more fulsome discussion. The Court has not required more in similar contexts. *C.f., e.g.*, *Trista L. v. Comm'r of Soc. Sec.*, No. 2:25-CV-01184, 2026 WL 1133321, at *4 (S.D. Ohio Apr. 27, 2026) (finding that the ALJ's determination of the Plaintiff being 5% off task was not arbitrary where the ALJ formulated the RFC based on record evidence); *Tammy W. v. Comm'r of Soc. Sec. Admin.*, No. 2:23-CV-1196, 2024 WL 4284251, at *6 (S.D. Ohio Sept. 25, 2024) ("The fact that the ALJ did not specifically explain why she chose five minutes off-task for every hour as the duration of her off-task limitation does not outweigh the fact that she explained and supported the inclusion of it within Plaintiff's mental RFC."); *Burton v. Comm'r of the Soc. Sec. Admin.*, No. 3:19-CV-00313, 2021 WL 388768, at *4 (S.D. Ohio Feb. 4, 2021) ("[A]lthough the ALJ did not specifically justify [a 5–8%] time-off-task range, she did engage in a meaningful assessment of Plaintiff's impairments that may affect her ability to remain on task."), *report and recommendation adopted*, No. 3:19-CV-313, 2021 WL 2186451 (S.D. Ohio May 28, 2021). Thus, the Court can adequately trace the ALJ's reasoning in formulating the RFC restriction based on record evidence.

This is not a situation where an ALJ found a medical opinion supported but did not explain how the limitations translated into a different RFC finding. *Cf. Farley v. Comm'r of Soc. Sec.*, No. 2:18-CV-1104, 2020 WL 772330, at *6 (S.D. Ohio Feb. 18, 2020) (remanding where a supported opinion found Plaintiff would need fifteen minute unscheduled breaks every half hour but the

ALJ's RFC included only an allowance for being off-task 8% of the work day), *report and recommendation adopted*, No. 2:18-CV-1104, 2020 WL 1042383 (S.D. Ohio Mar. 4, 2020). As stated above, the ALJ did not find Dr. Amiri's 25 feet supported by the record evidence either. Instead, the ALJ formulated the RFC based on the record evidence. It makes no difference that the ALJ did not rely on a medical opinion. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) (ruling that the ALJ's RFC finding need not correspond to a particular physician's opinion); *Trista L.*, 2026 WL 1133321, at *4; *Rudd v. Comm'r of Soc. Sec*., 531 F. App'x 719, 728 (6th Cir. 2013).

Finally, Plaintiff has not shown that he was prejudiced by the imposition of 100 feet restriction versus their preferred 25 feet. The ALJ adjudicated that Plaintiff was bound to sedentary jobs. (R. at 31). Plaintiff does not explain how the extra 75 feet of cane usage precludes him from completing those jobs at a sedentary level. In other words, Plaintiff has not demonstrated how any error results in harm.

For these reasons, Plaintiff's second claim of error lacks merit.

### C. The ALJ's Evaluation of Dr. Swedberg's Opinion

Plaintiff next challenges the ALJ's evaluation of Phillip Swedberg, M.D., the agency's consultative examiner. (Doc. 10 at 8–9).

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, they provide that an ALJ

must consider medical source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)–(5).

The regulations expressly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Indeed, the regulations require an ALJ to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allow that the ALJ "may, but [is] not required to, explain how [he] considered" the other factors. *Id.* At bottom, the role of the ALJ is to articulate how he considered medical opinions and how persuasive he found the medical opinions to be. *Holston v. Saul*, No. 1:20–CV–1001, 2021 WL 1877173, at *11 (N.D. Ohio Apr. 20, 2021), *report and recommendation adopted*, No. 1:20 CV 1001, 2021 WL 1863256 (N.D. Ohio May 10, 2021). The role of the Court is not to reweigh the evidence but to ensure the ALJ considered the proper factors and supported his conclusion with substantial evidence. *Id.* at *14.

Following his examination, Dr. Swedberg assessed Plaintiff with chronic low back pain with radiculopathy status post lumbar discectomy and status post lumbar fusion. (R. at 628). Dr. Swedberg opined that Plaintiff appears capable of performing less than a mild amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects. (R. at 629). In addition, Plaintiff had no difficulty reaching, grasping, and handling objects. (*Id.*). Dr. Swedberg found no visual, communication, or environmental limitations. (*Id.*).

The ALJ concluded that though Dr. Swedberg's limitations were well supported in the examination, ultimately Dr. Swedberg's opinion was unpersuasive. (R. at 29 (citing R. at 629)).

He reasoned that Dr. Swedberg used "vague" terms which were not particularly valuable in formulating an RFC. (*Id.*). More specifically, he stated that "finding [Plaintiff] capable of performing 'less than a mild amount of' various activities does not describe Plaintiff's abilities and limitations in functional terms." (R. at 29 (quoting R. at 629)). He then found Dr. Swedberg's "less than a mild amount" of activities opinion not consistent with other state agency consultants' opinions, nor medical evidence of record, which show the need for a cane for ambulation, but otherwise mild exam findings which he discussed earlier in his opinion. (*Id.*). All told, the ALJ did not adopt Dr. Swedberg's proposed limitations, but the ALJ considered them and explained how they were inconsistent with the record.

Plaintiff argues that the ALJ improperly discounted Dr. Swedberg's use of the phrase "less than mild amount" for being vague and not in functional terms. (Doc. 10 at 8–9). Specifically, Plaintiff alleges "less than a mild amount of activities" is not consistent with the RFC's determination that he can stand or walk half of the day. (*Id.* at 8). He admittedly does not have a definition for what "less than a mild amount" should be but asserts that standing or walking for half the day is not "less than a mild amount." (*Id.*).

Finding a conclusion vague goes to the supportability factor. *Cari A. H-R. v. O'Malley*, No. 3:23-CV-00678-RSE, 2025 WL 644279, at *7 (W.D. Ky. Feb. 27, 2025). Although such a classification is not on its own a sufficient supportability analysis, *id.*, the ALJ does not err if he includes "further commentary as to the objective medical evidence and supporting explanation underlying the opinion." *Howard H. v. Comm'r of Soc. Sec.*, No. 2:20-CV-4932, 2022 WL 765217 (S.D. Ohio Mar. 14, 2022). This commentary may be made through reference to other portions of his decision. *Cari A. H-R.*, 2025 WL 644279, at *7. Put differently, the ALJ must articulate in the decision why he found a conclusion to be vague. The ALJ did so.

Immediately after finding Dr. Swedberg's conclusion vague, the ALJ reasoned that while Dr. Swedberg's assessment is generally well supported, the terms used are not particularly valuable when assessing a Plaintiff's RFC. (R. at 29). From this, the Undersigned gathers that the ALJ found Dr. Swedberg's conclusion vague because Dr. Swedberg did not say how much "less than a mild amount" of sitting, ambulating, standing, bending, kneeling, pushing, pulling, lifting, and carrying objects is. *Tina R. v. Comm'r of Soc. Sec.*, No. 1:25–CV–00339, 2026 WL 322668, at *6 (S.D. Ohio Feb. 6, 2026), *report and recommendation adopted*, No. 1:25-CV-00339, 2026 WL 2066110 (S.D. Ohio July 17, 2026) (finding no error where the ALJ's classified Dr. Swedberg's "mild to moderate" designation as vague); *Wise v. Comm'r of Soc. Sec.*, No. 1:14-CV-709, 2015 WL 2169684 (S.D. Ohio May 8, 2015) ("The amount of [mild to moderate] activities is not clear from Dr. Swedberg's opinion."). The ALJ then explained in so far as deciphering what is "less than a mild amount," Dr. Swedberg's opinions do not align with the other state agency consultants' opinion, nor the medical evidence of record, which show the need for a cane, but often mild exam findings discussed earlier in his opinion. (*Id.*). As a result, the ALJ found his opinion unpersuasive to the degree that the ALJ cannot determine specifically what Dr. Swedberg meant by "less than a mild amount." (*Id.*). Thus, the Undersigned can adequately trace the reasoning for why he found this designation vague and the ALJ did not err.

Plaintiff also takes issue with the ALJ's determination that Dr. Swedberg's opinion is inconsistent with "often mild findings, as discussed above." (Doc. 10 at 8 (citing R. at 29)). The "as discussed above" refers to the ALJ's lengthy discussion of Plaintiff's medical exam history. (R. at 21–22; 24–27). Plaintiff quotes certain points of the ALJ's opinion which show "more than mild medical findings." (Doc. 10 at 8–9 (citing R. at 25–26)). However, Plaintiff ignores the other

portions of the ALJ's opinion which—as the ALJ referenced—discuss the more mild findings. (R. at 21–22; 24–27).

In the end, Plaintiff's argument is an invitation to reweigh the evidence. "[I]t is not this Court's job to reweigh the evidence, but only to determine if the ALJ has evaluated it in a reasonable fashion." *Whetsel v. Comm'r of Soc. Sec.*, No. 2:15-cv-3015, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017). And "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *see also Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) (rejecting an argument that the ALJ mischaracterized findings and noting "as long as the ALJ's findings were, as here, supported by substantial evidence, we may not second-guess them, even if substantial evidence would support the opposite conclusion"). Because the Court finds the ALJ met the minimum standard of articulation for supportability and his conclusion is supported by substantial evidence, Plaintiff's assignment of error is meritless.

**C. Plaintiff's Symptom Severity**

Finally, Plaintiff argues that the ALJ erred by "discount[ing] the symptom severity because the 'claimant has not generally required the type of medical treatment one would expect for a totally disabled individual.'" (Doc. 10 at 10). Plaintiff also states that the "only other reason provided by the ALJ for discounting [Plaintiff's] physical symptom severity is because [Plaintiff] described performing some limited, routine daily activities such as personal care, driving, and preparing simple meals," which he contends are not indicative of an ability to maintain employment. (*Id.* at 11).

When a Plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529 Social Security Ruling (SSR)

16-3p, 2016 WL 1119029, *3 (March 16, 2016). To begin, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged. Then, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See also* 20 C.F.R. § 404.1529(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but, through his analysis, must show that he considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-cv-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). Nonetheless, it remains the ALJ's province and not the reviewing court's to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the record as a whole. *See id.* Therefore, "absent a compelling reason," an ALJ's credibility/consistency determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

In considering the record, the ALJ attended to Plaintiff's testimony and the medical evidence about his symptoms in depth. (R. at 26–27). The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms,

his statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (R. at 26).

Among other things, the ALJ explained Plaintiff's daily activities, including personal care activities, driving, doing his own shopping, managing his own finances, caring for his children, attending their sporting events, and preparing simple meals, were "not limited to the extent one would expect given his allegations of disabling symptoms." (R. at 27 (citing R. at 275–82)).

Moreover, the ALJ found that Plaintiff's medical treatment was not commensurate with the expected treatments for a totally disabled individual. (*Id.*). Specifically, the ALJ discussed that Plaintiff's alleged severe mental impairments are not consistent with the Plaintiff's mild presentation during psychological consultative exams and his reported activity level which made no mention of any mental limitations in his daily activities. (*Id.*). Further, the ALJ found that the alleged mental impairments were inconsistent with Plaintiff's "very limited, conservative treatment and routinely normal mental status exam finding made by his family doctor." (*Id.*).

Turning to Plaintiff's physical impairments, the ALJ found his alleged post-surgical left leg and arm weakness are not consistent with his EMG study. (*Id.* (citing R. at 891)). He discussed in depth the EMG study and all the findings which show no evidence to explain Plaintiff's alleged left arm and leg numbness, weakness, and radiculopathy. (*Id.*). The ALJ also found Plaintiff's syncopal episodes intermittent with no ongoing cause identified, apart from side effects of medication potentially. (*Id.*).

Accordingly, the Undersigned finds no error in the ALJ's evaluation of Plaintiff's subjective complaints of pain and symptoms. The ALJ did not, as the Plaintiff says, rely only on Plaintiff's ability to perform "some limited, routine daily activities" to discredit Plaintiff's allegations of the intensity, persistence, and limiting effects of his symptoms. (Doc. 10 at 11 (citing

R. at 27)). While true that the ALJ considered Plaintiff's daily routine—which the regulations permit him to do—the ALJ also considered Plaintiff's allegations against the objective evidence in the record and other considerations outlined in 20 C.F.R. § 404.1529(c)(3). (R. at 24–30). Simply put, the ALJ took account of the whole record when making his findings. At base, Plaintiff has not presented a compelling reason to disturb the ALJ's determination.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 10) and **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a forfeiture of the right to have the district judge review the Report and Recommendation *de novo* and in a forfeiture of the right to appeal the decision of the District Court adopting the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530–31 (6th

Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: October 5, 2026

*s/* Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE